GERALD MOLAVER ET AL. *v.* EDMUND THOMAS
(AC 30898)

Gruendel, Robinson and Alvord, Js.

Submitted on briefs September 10—officially released November 16, 2010

*Robert E. Ghent* filed a brief for the appellant (defendant).

ROBINSON, J. The defendant, Edmund Thomas, appeals from the judgment of the trial court awarding the plaintiffs, Gerald Molaver and Edie Molaver, damages in an action seeking payments due under a commercial lease. On appeal, the defendant claims that the trial court improperly concluded that he (1) was liable to the plaintiffs for his pro rata share of the increase in property taxes assessed for the years 2002 and 2003 and (2) impliedly assented to pay a higher rental rate pursuant to an unexecuted lease. We affirm the judgment of the trial court.

The court found the following facts. The plaintiffs were the owners of real estate located at 1325 East Main Street in Waterbury. The plaintiffs and the defendant entered into a lease on March 25, 1998, for office space of 800 square feet on the second floor of the building. The lease had a one year term from March 1, 1998, to February 28, 1999, at an annual base rent of $4200 payable in equal monthly installments of $350. The lease also provided that the defendant was responsible for a pro rata share of increases in the real estate taxes as well as a pro rata share of increases in the fire insurance premium and fuel costs for the building, and 10 percent of the cost of snow removal for the building. Additionally, the lease provided that if the defendant did not surrender the premises at the end of the lease term, he could be treated as a month-to-month tenant subject to all of the terms and covenants of the lease.

The defendant did not surrender the premises at the end of the lease term. Thereafter, the plaintiffs and the defendant, by exchanged letters, agreed to continue the lease under the same terms in the expired lease, except for rent, which the plaintiffs increased to $375 per month. At some point before the year 2004, the defendant asked to rent an additional 800 square feet adjacent

to the original 800 square foot space in the building. The plaintiffs agreed to lease the additional space under the same terms and conditions in the expired lease with an increase in the monthly base rent to $750. The defendant agreed and paid the plaintiffs rent in accordance with those terms.

On October 22, 2004, the plaintiffs sent the defendant a new lease for a term to commence on November 1, 2004. The new lease provided for an increase in the rental amount from $750 per month to $950 per month. By a letter dated December 6, 2004, the plaintiffs notified the defendant of his responsibility for increases in real estate taxes for the building for the years 2002 and 2003 and therefore requested payments of $1720.80 for the year 2002 and $1559.80 for the year 2003. On January 9, 2005, the plaintiffs sent the defendant a letter acknowledging that he did not intend to enter into the new lease. That letter stated that the plaintiffs would treat the defendant as a month-to-month tenant subject to all the terms and conditions of the new lease with an effective date of November 1, 2004. The parties never executed the 2004 lease.

The defendant continued to remain in possession of the premises and paid the plaintiffs $750 per month. By a letter to the defendant dated February 27, 2005, the plaintiffs stated that the defendant had not been paying the new monthly rent of $950 but had only been paying $750 per month. That letter also stated that the defendant had failed to pay his share of the increase in real estate taxes for 2002 and 2003 as set forth in the letter dated December 6, 2004. The defendant vacated the premises in November, 2005.

The plaintiffs commenced the present action in the Housing Session seeking damages for past due rent and unpaid real estate taxes. The defendant subsequently filed an answer raising numerous special defenses.

Thereafter, the matter was tried to the court. After reviewing the evidence and testimony presented, the court concluded that (1) the defendant was liable for his pro rata share of the increase in real estate taxes because under a provision in the original lease he was subject to the conditions and covenants therein, and (2) the monthly rental from November, 2004, through November, 2005, was $950, as stated in the new lease, because the defendant had notice of the new rental term and remained in possession of the premises. The court also awarded the plaintiffs interest and attorney's fees. The defendant appeals from the judgment.

Initially, we set forth our standard of review. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Kimberly-Clark Corp.* v. *Dubno*, 204 Conn. 137, 153–54, 527 A.2d 679 (1987). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985).

I

The defendant first claims that the court improperly awarded the plaintiffs damages for his pro rata share of the increase in property taxes assessed for the years 2002 and 2003. Specifically, he argues that although the original lease contained a provision giving the plaintiffs the option to treat him as a month-to-month tenant subject to the conditions and covenants of that lease, the plaintiffs failed to effectuate that provision. We conclude that the record is inadequate to review the defendant's claim.

The following additional facts are relevant to the defendant's claim. Paragraph 25 of the original lease contained a provision giving the plaintiffs the option to elect to treat the defendant as a month-to-month tenant subject to the conditions and covenants of that lease if the defendant were to hold over past the expiration of the term.[1] Paragraph 3.C provided that the defendant would be responsible for his pro rata share of the annual increase in property taxes.[2] The defendant contends

[1] Paragraph 25 of the lease provides in relevant part: "[I]n the event Lessee shall not immediately surrender said premises on the day after the end of the term hereby created, then Lessor may at its option elect to treat the Lessee as a tenant by the month at twice the rental per month of the monthly installment of rent agreed by the said Lessee to be paid for the prior month as aforesaid, commencing said monthly tenancy with the first day next after the end of the term above demised, and said Lessee as a monthly tenant shall be subject to all conditions and covenants of this Lease as though the same had originally been a monthly tenancy. . . ."

[2] Paragraph 3.C of the lease provides in relevant part: "The Lessee shall pay annually to the Lessor the Lessee's pro rata share, as hereinafter defined, of any increase in the real estate taxes assessed against and attributable to the building and land constituting the premises annexed hereto over and above the amount of such taxes assessed and attributed to such building and land for the 1997 assessment. . . ."

that the plaintiffs never elected to treat him as a month-to-month tenant pursuant to paragraph 25. He argues, therefore, that he is not bound by paragraph 3.C. The court did not make a finding as to whether the plaintiffs elected to effectuate paragraph 25. It is unclear from the memorandum of decision whether the trial court found that the plaintiffs elected to treat the defendant as a month-to-month tenant pursuant to paragraph 25. In the face of that ambiguity, the defendant should have sought an articulation as to whether the court found that the plaintiffs elected to effectuate paragraph 25. Without such an articulation, we are left to speculate as to the propriety of the court's conclusion.

"Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the appellant's claim] would be entirely speculative." (Internal quotation marks omitted.) *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998). It is well established that "[a]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . [P]roper utilization of the motion for articulation serves to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 685–86, 911 A.2d 300 (2006). "[W]hen the decision of the trial court does not make the factual predicates of its findings clear, we will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d

889 (2002). Accordingly, we decline to review the defendant's claim.[3]

## II

The defendant also challenges the court's conclusion that he was required to pay the plaintiffs the rental amount of $950 per month from November, 2004, through November, 2005, as opposed to the $750 he had been paying. In support of its conclusion, the court found that the defendant impliedly assented to the terms of the 2004 lease because he had notice of the terms and nevertheless continued to remain in possession of the premises. The defendant argues that the court's conclusion is not supported by the record. We disagree.

The court relied on our Supreme Court's decision in *Welk* v. *Bidwell*, 136 Conn. 603, 73 A.2d 295 (1950), to support its conclusion that the defendant impliedly assented to the $950 monthly rental term. In *Welk*, the landlord and the tenant had agreed to a month-to-month lease of a tobacco barn for $10 per month. Id., 605. Prior to the expiration of one month's term, the landlord informed the tenant that he was increasing the rent to $125. Id. The tenant held over, refused to pay $125 per month and continued to pay $10 per month. Id. The landlord brought an action to collect the difference between $10 and $125 per month. Id., 604–605. The

---

[3] The defendant also claims that the court improperly awarded the plaintiffs attorney's fees. Paragraph 15a of the original lease provides in relevant part: "[I]n the event that legal proceedings are instituted against the Lessee by Lessor, due to the non-payment of rent, noncompliance with any of the terms, conditions or covenants of this Lease or for possession, then the Lessee agrees to pay all costs incident to such proceedings, including reasonable attorney's fees for the Lessor's attorney, provided the Lessor prevails in set proceedings." The defendant argues that, because the plaintiffs did not elect to treat him as a month-to-month tenant pursuant to paragraph 25 of the lease, he therefore is not bound by paragraph 15a. Because we hold that the record is inadequate as to whether the plaintiffs effectuated paragraph 25 of the lease, we also decline to review this claim.

court concluded that the landlord could not impose the increased rent on the tenant because "[t]he [tenant's] flat refusal to agree to pay that rent left the parties without any contract with reference to the occupancy of the property." Id., 608. The court declared that "[i]ndeed, *if the landlord had specified terms for the future occupancy of the property, the continuance in possession by the tenant without objection by him to those terms might have been construed as an acceptance of those terms and thus a contract would have been implied from the conduct of the parties.* . . . But if there had actually been no meeting of the minds either because of ambiguity or uncertainty in negotiations or because the negotiations had not been completed, then, of course, there could have been no contract. . . . If a tenant remains in possession without the consent of the landlord, there is no contract for an extended term to be implied from the holding over. . . . A fortiori, where the parties are in definite dispute as to any of the essential terms of a new tenancy, certainly no lease can be implied from the fact that the tenant holds over." (Citations omitted; emphasis added.) Id., 607–608.

Upon our review of the record, we find ample support for the court's conclusion that the defendant impliedly assented to the $950 monthly rental term. Based on Gerald Molaver's testimony and supporting exhibits, the court found that the plaintiffs sent the defendant the terms of the new month-to-month tenancy on October 22, 2004. The defendant testified that he had received those terms sometime in October, 2004. Gerald Molaver also testified that he had sent the defendant a letter dated February 27, 2005, requesting that the defendant sign the letter to confirm the terms of the new month-to-month tenancy and to confirm that he would pay the increased rent. Gerald Molaver further testified that the defendant did not sign the letter, failed to pay rent in accordance with the new terms and

remained in possession of the property until the middle of November, 2005. On the basis of that evidence, the court determined that the defendant had received notice of the new terms and nevertheless remained in possession of the property until the middle of November, 2005. We conclude, therefore, that there is ample support in the record for the court's conclusion that the defendant impliedly assented to the $950 rental term.[4]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] We note that although the court's conclusion that the defendant impliedly assented to the terms of the new lease is supported by the record, there also is evidence in the record to support a finding that the defendant expressly assented to the $950 rental term. The trial court noted in its memorandum of decision that the defendant acknowledged and agreed to pay the $950 monthly rent while he remained in possession of the property. Furthermore, the plaintiffs' letters to the defendant dated January 9 and February 27, 2005, indicate that the defendant agreed to the $950 monthly rental term.