MARCI FESTA v. BOARD OF EDUCATION OF THE
TOWN OF EAST HAVEN
(AC 34923)

Robinson, Alvord and Bishop, Js.

104

that application, and the deductions from the policy's accumulated cash value.

Argued May 15—officially released August 20, 2013

*Jason R. Stanevich*, with whom, on the brief, was *Lori B. Alexander*, for the appellant (defendant).

*John R. Williams*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant, the Board of Education for the Town of East Haven (board), appeals from the judgment of the trial court remanding the board's decision to terminate the employment contract of the plaintiff, Marci Festa, for further proceedings pending an independent medical evaluation of the plaintiff. The board claims that the trial court erred by (1) not

affirming the board's decision to terminate the plaintiff's employment for insubordination, and/or other due and sufficient cause pursuant to the Teacher Tenure Act, General Statutes § 10-151, because the court improperly considered the issue of discrimination,[1] and (2) finding that the board violated the Fair Employment Practices Act, General Statutes § 46a-60, by terminating the plaintiff's employment before conducting an independent medical evaluation of the plaintiff.[2] We reverse the judgment of the trial court.

The record reveals the following facts and procedural history relevant to our resolution of this appeal. The plaintiff, a tenured teacher, began her employment as an elementary school teacher with the East Haven Public Schools in August, 1996, and is certified to teach kindergarten through sixth grade. She taught third grade until the board transferred her to a kindergarten position for the 2006–2007 school year.

In August, 2006, the plaintiff was involved in an automobile accident. She did not take any leave from work and was able to continue her employment as a kindergarten teacher. In June, 2008, several teachers filed complaints against the plaintiff alleging that she had

[1] We note that in its statement of issues the board asserted that it is challenging whether the trial court erred in not affirming its decision to terminate the plaintiff "based on the substantial evidence in the administrative record," and that the plaintiff, in her appeal to the trial court, also asserted that she was contesting whether there was substantial evidence in the record to support the panel's findings of insubordination and other due and sufficient cause. Because the substance of both arguments, however, examines the panel's *legal* conclusions that the plaintiff's employment properly was terminated on the grounds of insubordination and other due and sufficient cause, we will address the arguments as such.

[2] Although the board additionally argues that there was substantial evidence to support the plaintiff's termination on the ground of job abandonment, the Teacher Tenure Act does not provide for job abandonment as a ground for terminating a tenured teacher. Additionally, the record indicates that the board only terminated the plaintiff's employment for insubordination and other due and sufficient cause.

made inappropriate comments, which, upon investigation, the board found to have merit. The plaintiff, however, was involved in a second automobile accident before the board issued a disciplinary decision. Due to the injuries sustained from the second accident, the plaintiff remained out of work from October, 2008, until May, 2009.

Shortly after the start of the 2009–2010 school year, the board received complaints that the plaintiff again had made inappropriate comments to parents and to staff. She was suspended pending an investigation and was also suspended for five days because of the June, 2008 complaints. The plaintiff's attorney suggested that her behavior was the result of injuries she suffered from the two automobile accidents, and the board agreed to send the plaintiff for an independent medical examination conducted by Adam Mednick, a neurologist.

Mednick concluded that the plaintiff had a traumatic brain injury due to the two automobile accidents and that a combination of the plaintiff's traumatic brain injury and the medication she was taking for pain were the likely cause of the plaintiff's inappropriate comments. Mednick's report did not discuss whether the plaintiff's abilities were limited or comment on her teaching capabilities, as those issues were not within the scope of the examination. Upon review of the report, the board decided to reinstate the plaintiff.

Between the 2009–2010 and 2010–2011 school years, the board conducted unprecedented restructuring of the school district, closing two schools and restructuring the remaining elementary schools. As a result, approximately fifty percent of the teachers experienced a change in assignment. The plaintiff was one of these teachers. By letter dated July 27, 2010, Superintendent Anthony Serio informed the plaintiff that she was being transferred to teach third grade at East Haven Academy.

On August 17, 2010, the plaintiff met with Serio and Assistant Superintendent Erica Forti to discuss her reinstatement and her new position teaching third grade. At that meeting, the plaintiff discussed her concerns about teaching third grade in light of her traumatic brain injury and requested a transfer back to a kindergarten classroom. She also presented Serio with a letter from her physician, Mark Thimineur, dated August 16, 2010. Thimineur's letter stated that although the plaintiff was capable of teaching kindergarten, in his opinion, she was incapable of teaching third grade because she struggled with "certain cognitive difficulties" and therefore, she would "not be able to handle adequately the complexities of a third grade level teaching responsibility." Serio declined to change the plaintiff's assignment, stating that he was unaware of any factual basis upon which Thimineur could base his opinion since, to his knowledge, he never contacted the board to determine the difference in skill set needed to teach the two grades. Furthermore, Serio stated that there was no difference in the skills and abilities required to teach the two grades and therefore, he believed that assigning the plaintiff to a third grade classroom was in the best interest of her, the students, and the school district.

Serio reaffirmed his decision and reasoning not to transfer the plaintiff's teaching assignment in a letter to the plaintiff dated August 20, 2010. He offered to discuss any accommodations the plaintiff might need in her new position and stated that he expected the plaintiff to start the school year as scheduled. The plaintiff's lawyer responded and requested on his client's behalf that the board transfer the plaintiff to a kindergarten position as a reasonable accommodation of her disability. Serio again refused to authorize the transfer, but invited the plaintiff to speak with him about any accommodations necessary for her third grade position. On September 1, 2010, the plaintiff did not appear for

the first day of work for teachers in the East Haven Public Schools. She did not alert the board that she would be absent, nor did she file a grievance concerning her third grade position with the teacher's union. Because of her absence, other teachers unpacked and prepared her classroom for the students who would begin school the following week. The board also made last minute position transfers and hired another teacher to cover the plaintiff's position. Because of her failure to appear on the first day of work, Serio wrote the plaintiff a letter informing her that he believed she had abandoned her position and, thus, resigned. Thereafter, the board terminated her salary and benefits.

The plaintiff filed a civil action in the Superior Court, alleging that her employment was terminated in violation of the Teacher Tenure Act[3] because the board did not hold a hearing to determine if there was cause under the statute to justify that termination. As part of a settlement agreement, the board agreed to reinstate the plaintiff and to initiate an administrative hearing pursuant to § 10-151. By letter dated November 23, 2010, the board informed the plaintiff that her employment contract was under consideration for termination. The

---

[3] We note that the Teacher Tenure Act has been amended several times since 2010. See Public Acts 2010, No. 10-111, § 9; Public Acts 2011, No. 11-28, § 8; Public Acts 2011, No. 11-135, § 10; Public Acts 2011, No. 11-136, § 14; Public Acts 2012, No. 12-116, § 57. The amendments in Public Acts 2012, No. 12-116, will take effect on July 1, 2014. Because these amendments are not relevant to the claims raised by the plaintiff, we refer in this opinion to the current revision of § 10-151.

General Statutes § 10-151 (d) provides in relevant part: "The contract of employment of a teacher who has attained tenure shall be continued from school year to school year, except that it may be terminated at any time for one or more of the following reasons: (1) Inefficiency or incompetence. . . (2) *insubordination against reasonable rules of the board of education;* (3) moral misconduct; (4) disability, as shown by competent medical evidence; (5) elimination of the position to which the teacher was appointed or loss of a position to another teacher . . . or (6) *other due and sufficient cause. . . .*" (Emphasis added.)

plaintiff responded, seeking a statement of the reasons why the board was considering terminating her employment contract. The plaintiff was provided with a statement of reasons that cited job abandonment, insubordination, and other due and sufficient cause as grounds for her termination. She then requested a hearing.

After three days of proceedings, the impartial hearing panel (panel) concluded that the plaintiff was insubordinate and that other due and sufficient cause existed to support the plaintiff's termination. The panel unanimously recommended that the board terminate the plaintiff's employment for insubordination and other due and sufficient cause. On May 25, 2011, the board informed the plaintiff that the board had adopted the findings of fact, conclusions and recommendations of the panel, and, accordingly, terminated the plaintiff's employment contract.

On May 31, 2011, the plaintiff filed the present action in the Superior Court, pursuant to the Teacher Tenure Act, appealing from the board's decision to terminate her employment. In a memorandum of decision dated July 26, 2012, the court held that the board violated the plaintiff's rights under the Fair Employment Practices Act by not conducting an independent medical evaluation of the plaintiff before terminating her employment. It found that the evidence presented to the panel supported a prima facie case of discrimination on the basis of the board's failure to order further testing of the plaintiff before denying her request to teach kindergarten. Thus, the court found that a credible argument had been made that the plaintiff's mental disability claim was, in effect, ignored by the board, and therefore, remanded the case back to the board for further proceedings pending an independent medical evaluation of the plaintiff. Because of this ruling, the court did not

determine whether the panel's factual findings supported its legal conclusions that the plaintiff's employment properly was terminated for insubordination and other due and sufficient cause. This appeal followed.

We begin by setting forth the standard of review and other legal principles pertinent to this appeal. Pursuant to the Teacher Tenure Act, a court reviewing an appeal from the decision of the board "may affirm or reverse the decision appealed from in accordance with subsection (j) of section 4-183." General Statutes § 10-151 (e). General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

"Judicial review of the school board's administrative decision follows established principles of administrative law. The court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the [board] must stand if the court determines that they resulted from a correct application of the law to the

facts found and could reasonably and logically flow from such facts. . . . Judicial review of [a board's] decision requires a court to determine whether there is substantial evidence in the administrative record to support the [board's] findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Citation omitted; internal quotation marks omitted.) *Langello* v. *West Haven Board of Education*, 142 Conn. App. 248, 264–65, 65 A.3d 1 (2013). "Our task is to review the court's decision to determine whether it comports with [§ 4-183 (j)], and whether the court reviewing the [board's decision] acted unreasonably, illegally, or in abuse of discretion." (Internal quotation marks omitted.) *Lawendy* v. *Connecticut Board of Veterinary Medicine*, 109 Conn. App. 113, 118, 951 A.2d 13 (2008).

I

The board claims that the trial court erred in not affirming the board's decision to terminate the plaintiff's employment for insubordination and other due and sufficient cause. It argues that the court failed to uphold the plaintiff's termination on the basis of the undisputed factual findings because the court improperly considered the plaintiff's disability claim, thereby abusing its discretion. The plaintiff argues that the court properly considered the issue of the board's compliance with the Fair Employment Practices Act because the plaintiff raised the board's failure to make a reasonable accommodation at the administrative hearing as a defense for her failure to report for work. The plaintiff argues that the board failed to reasonably accommodate her disability, and, therefore, she was not insubordinate, nor was there other due and sufficient cause to terminate her employment. Because the plaintiff raised the issue of reasonable accommodation as a defense to her termination, and in light of our recent decision in *Langello* v. *West Haven Board of Education*, supra, 142

Conn. App. 248, we conclude that the court did not abuse its discretion by considering whether the board complied with the Fair Employment Practices Act.

In *Langello*, "we conclude[d] that any teacher who is terminated pursuant to the Tenure Teacher Act enjoys the protections of the Fair Employment Practices Act. A contrary conclusion . . . would thwart the purpose of the Fair Employment Practices Act. To ensure compliance with the purpose of the Fair Employment Practices Act, a teacher who is discharged for *any* of the reasons enumerated in § 10-151 (d) must be afforded the protections of § 46a-60." (Emphasis added.) Id., 260. Section 46a-60 (a) (1) prohibits discrimination because of an individual's "present or past history of mental disability, intellectual disability, learning disability or physical disability . . . ." Moreover, our Supreme Court has held that the Fair Employment Practices Act requires "employers to make a reasonable accommodation for an employee's disability." *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415, 944 A.2d 925 (2008).

Therefore, in keeping with the public policy that prohibits discrimination because of disability, and our recent precedent established in *Langello*, we conclude that the court did not abuse its discretion in considering whether the plaintiff was afforded the protections of the Fair Employment Practices Act when the board terminated the plaintiff's employment for insubordination and other due and sufficient cause.

II

Having determined that the court did not abuse its discretion by considering the plaintiff's claim regarding the Fair Employment Practices Act, we must now address the board's claim that the trial court acted unreasonably, illegally or in abuse of its discretion in determining that the plaintiff was not afforded the protections of the Fair Employment Practices Act. The

board argues that the court improperly found that it violated the Fair Employment Practices Act by terminating the plaintiff without conducting an independent medical evaluation of the plaintiff. We agree with the board.

On appeal to the trial court, the plaintiff argued that the board failed to provide the plaintiff with a reasonable accommodation for her disability because the board denied her request to transfer to a kindergarten position. Furthermore, the plaintiff argued that the board failed to make any effort to engage her in the interactive process required under the Fair Employment Practices Act.

As previously stated, the Fair Employment Practices Act requires employers to make a reasonable accommodation for an employee's known disability. *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 415. Although this case concerns Connecticut law, our Supreme Court has held that "we review federal precedent concerning employment discrimination for guidance in enforcing our own antidiscrimination statutes." Id.

To assert a reasonable accommodation claim, "the plaintiff must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." (Citations omitted; internal quotation marks omitted.) Id., 415–16.

"Once a disabled individual has suggested to his employer a reasonable accommodation, federal law requires, and [our Supreme Court] agree[s], that the

employer and the employee engage in an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. . . . In this effort, the employee must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion." (Citation omitted; internal quotation marks omitted.) Id., 416. "The need for bilateral discussion arises because each party holds information the other does not have or cannot easily obtain. . . . However, recognizing that the responsibility for fashioning a reasonable accommodation is shared between the employee and the employer . . . courts have held that an employer cannot be found to have violated the [American Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.] when responsibility for the breakdown of the informal, interactive process is traceable to the employee and not the employer." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Loulseged* v. *Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).

"Neither the ADA nor the regulations assign responsibility for when the interactive process fails. No hard and fast rule will suffice, because neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate

the cause of the breakdown and then assign responsibility." *Beck* v. *University of Wisconsin Board of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

The record reveals that the parties did engage in the interactive process. The plaintiff, Serio, and Forti met on August 17, 2010, to discuss the plaintiff's reinstatement and transfer to the third grade. At this meeting, the plaintiff presented Serio with a letter from her physician, which stated that she could not teach third grade because of her "cognitive difficulties," but that she was still capable of teaching kindergarten. This letter did not discuss what cognitive difficulties the plaintiff had or how those difficulties related to her job. At the end of the meeting, Serio stated that he was unaware of any basis upon which her physician could opine that the plaintiff was qualified to teach kindergarten but not third grade. Additionally, because Serio found no difference in the skills needed to teach the two grades, he declined the plaintiff's transfer request, but invited her to discuss any other accommodations that might aid her in her third grade position. In a letter dated the following day, he reduced these communications to the plaintiff to writing. Instead of providing Serio with additional medical information that would allow him either to conclude that the plaintiff's request was reasonable, or to aid him in suggesting other reasonable accommodations, the plaintiff responded by demanding that the board transfer her to a kindergarten position. In response, Serio denied her request, but again invited the plaintiff to discuss any accommodations that might aid her in her position as a third grade teacher. The plaintiff then failed to report to work on the first day of work for teachers.

The record also reveals that the plaintiff was responsible for obstructing the interactive process between the parties. The plaintiff is not entitled to the accommodation of her choice; she is entitled to a reasonable

accommodation. See *McElwee* v. *County of Orange*, 700 F.3d 635, 641 (2d Cir. 2012) ("[a]lthough a public entity must make reasonable accommodations, it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice" [internal quotation marks omitted]). Moreover, if the plaintiff needs a specific accommodation, then she needs to provide the board with enough information for the board to understand why only that accommodation is sufficient. "Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process." *Beck* v. *University of Wisconsin Board of Regents*, supra, 75 F.3d 1136; see also *Mengine* v. *Runyon*, 114 F.3d 415, 420 (3d Cir. 1997) (employers will not always understand what employee is capable of and employee will not always understand what accommodations are reasonably available).

After Serio informed the plaintiff during their August 17, 2010, meeting that the letter from her physician was not sufficient to support her position that only a kindergarten position was a reasonable accommodation for her disability, the plaintiff failed to provide Serio with any additional information. The record reveals that the plaintiff was aware that the board lacked sufficient information to understand how her disability specifically affected her job performance, and, therefore, did not understand why her requested accommodation was necessary or reasonable as her physician's letter did not inform the board of how the plaintiff's disability affected her skills or job performance, or on what basis he founded his opinion that only a kindergarten position would accommodate her disability. Only the plaintiff could provide the board with information of her medical condition, and without such information, the board

could not have been expected to know what accommodations were necessary and reasonable to aid the plaintiff. Instead of providing that information, the plaintiff again demanded a transfer to a kindergarten classroom. She then failed to report to work on September 1, 2010, for orientation, after Serio again rejected her request but expressed that he would be willing to discuss accommodations so that she could teach the third grade. The plaintiff obstructed the process by failing to engage Serio in his offers to discuss alternate reasonable accommodations, and then by failing to report to work on September 1, 2010. See *Beck* v. *University of Wisconsin Board of Regents*, supra, 75 F.3d 1135 ("[a] party that fails to communicate, by way of initiation or *response*, may also be acting in bad faith" [emphasis added]). By failing to accept the board's subsequent offers to discuss other reasonable accommodations, the plaintiff did not demonstrate a good faith effort to participate in the process.

Furthermore, by failing to report to work, the plaintiff withdrew from the interactive process before the performance of her teaching duties was imminent. Courts have found, and we agree, that the employer is not liable for failing to make a reasonable accommodation until the employee's problematic duties are imminent. See *Loulseged* v. *Akzo Nobel Inc.*, supra, 178 F.3d 737 ("we believe that in an informal process the employer is entitled to move at whatever pace he chooses as long as the ultimate problem—the employee's performance of her duties—is not truly imminent"). The plaintiff's counsel claimed in oral argument before this court that reporting to work on September 1, 2010, would have harmed the plaintiff. We discern no evidence in the record, however, to support that assertion. Although the plaintiff was required to report for work on September 1, 2010, students did not start school until the following week. Thus, the plaintiff's failure to report for work

occurred before she actually was required to teach. Therefore, the plaintiff prevented the board from completing the process and demonstrating its good faith.

We discern no evidence in the record that the board failed to respond in some manner to the plaintiff's request for accommodation, nor is there evidence from which we can discern any attempt by the board to ignore her request for a reasonable accommodation. The plaintiff has been afforded the protection required by the Fair Employment Practices Act, but the record reflects that she was responsible for the breakdown in the interactive process. Accordingly, the court abused its discretion by finding that the board failed to comply with the mandates of the Fair Employment Practices Act and by remanding the matter back to the board for further consideration pending a medical evaluation of the plaintiff.

### III

Having based its ruling on its erroneous determination that the board failed to comply with the Fair Employment Practices Act, the court failed to address the plaintiff's claim as to whether the board properly terminated her employment on the grounds of insubordination and other due and sufficient cause. As that is the sole issue left to be resolved in this administrative appeal, we ordinarily would remand the matter with direction to the court to determine whether the panel's factual findings support its conclusion that the plaintiff's employment was properly terminated. In all likelihood, the court would make its determination and one of the parties would appeal. None of the facts would change on remand, however, and on a second appeal, we would again be faced with the substantive question of whether the board properly terminated the plaintiff's employment, which is a question of law. See *Louis Gherlone Excavating, Inc.* v. *McLean Construction Co.*,

*Inc.*, 88 Conn. App. 775, 782, 871 A.2d 1057, cert. granted, 274 Conn. 909, 876 A.2d 1201 (2005) (appeal withdrawn February 3, 2006); see also *Christian Activities Council, Congregational* v. *Town Council*, 249 Conn. 566, 581, 735 A.2d 231 (1999) ("[w]here . . . the administrative agency has made a legal determination, the scope of review ordinarily is plenary"). "[B]ecause the administrative record before us on appeal is identical to that which was before the trial court, the interests of judicial economy would not be served by a remand in this case." *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 216 Conn. 627, 639, 583 A.2d 906 (1990). We therefore review the plaintiff's claim directly.

On appeal to the trial court, the plaintiff argued that the board's conclusions that the plaintiff was insubordinate and that other due and sufficient cause existed to terminate the plaintiff's employment were arbitrary, unreasonable and unsupported by the evidence because the board failed to make a reasonable accommodation for her disability. The plaintiff argued that she unquestionably presented unchallenged evidence that: (1) she is disabled within the meaning of Connecticut law, (2) she is able to perform the essential functions of her job if given the accommodation of being assigned a kindergarten position, (3) such position was available, (4) she requested it, and (5) the defendant not only refused to grant that accommodation, but also failed to engage in the mandatory interactive process with the plaintiff as required by the Fair Employment Practices Act.

To support these assertions, the plaintiff pointed to her hearing testimony, in which she testified that there was a difference in the skills necessary to teach third grade and kindergarten, and that she was qualified to testify on this issue because of her experience teaching both grades. Furthermore, the plaintiff argued that she

offered testimony as to how her disability specifically affected her abilities to teach and that the letter from her physician supported her assertion that she could not teach third grade, but was still capable of teaching kindergarten. Thus, the plaintiff argued that in light of this evidence, it was unreasonable for the panel to conclude that she was insubordinate and that there was other due and sufficient cause to terminate her employment because the board failed to provide a reasonable accommodation for her disability, and, therefore she was excused from reporting to work.

The board countered that the plaintiff had not challenged any of the panel's findings of fact or argued how the factual findings were unsupported by substantial evidence in the record. Because there was evidence to support the panel's uncontested findings, the board asked that its decision be upheld.

As we previously stated, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [board] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the [board] must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts." (Internal quotation marks omitted.) *Langello* v. *West Haven Board of Education*, supra, 142 Conn. App. 264–65.

As the board correctly noted, the plaintiff does not challenge any of the factual findings that supported the panel's conclusions that she was insubordinate and that there was due and sufficient cause for her termination. On the basis of our review of the record, we agree that the conclusions made by the panel reasonably and logically flow from the facts found by it. Because we have determined that the board did not violate the Fair Employment Practices Act as the record reflects that

the plaintiff caused a breakdown in the interactive process for determining whether she needed a reasonable accommodation, and in light of the evidence, we conclude that the board did not abuse its discretion in terminating the employment of the plaintiff on the grounds of insubordination and other due and sufficient cause.

The judgment is reversed and the case is remanded to the trial court with direction to render judgment affirming the board's decision to terminate the plaintiff's employment for insubordination and other due and sufficient cause.

In this opinion the other judges concurred.